UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD KIDD,

    Plaintiff,

v.                                                  CASE NO. 6:18-cv-790-Orl-28JBT

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying his applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. In a decision dated January 24, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 18, 2010, the alleged onset date of disability, through the date of decision. (Tr. 559–77.) Plaintiff has exhausted his available administrative remedies and the case is

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully recommends that the Commissioner's decision be **AFFIRMED**.

### I. Issues on Appeal

Plaintiff raises the following 3 issues on appeal:

> Whether the ALJ erred in determining that the claimant has the residual functional capacity to perform medium work with some non-exertional limitations after failing to adequately consider and provide adequate weight to the opinion of the claimant's treating physician.
> . . .
>
> Whether the ALJ properly relied on the testimony of the Vocational Expert after posing and relying on a hypothetical question that did not adequately reflect the limitations of the claimant.
> . . .
>
> Whether the ALJ erred in finding that the claimant was "not entirely credible" after failing to make an adequate credibility finding.

(Doc. 22 at 14–15, 22, 24.)

### II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations

and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III.    The ALJ's Decision

This case came before the ALJ on remand from this Court. (Tr. 650–67.) As the ALJ summarized:

> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned on July 8, 2016, to offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision (Ex. 12A, p.3). The District Court found the decision was not supported by substantial evidence in regards to adequately considering and weighing the opinion of the claimant's treating psychiatrist and evaluating the claimant's credibility regarding his subjective complaints. Specifically, the District Court documented there needs to be further consideration of the claimant's testimony. Additionally, the District Court found the prior limitation of simple, routine tasks with one to three step tasks did not account for deficits in pace; the prior Administrative Law Judge failed to distinguish between concentration and pace.

(Tr. 559.)

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments:

> [D]egenerative disc disease of lumbar spine; diabetes mellitus; hypertension; schizoaffective mood disorder; bipolar disorder; attention deficient hyperactivity disorder ("ADHD"); anxiety disorder; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

3

(Tr. 562.)[2]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 562–64.)  In reaching this conclusion, the ALJ found that Plaintiff had moderate limitations in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (Tr. 562–63.)

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> [T]o perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to workplace hazards; can perform simple routine, repetitive tasks with no more than occasional changes in a routine work setting and no production rate pace work; can occasionally interact with coworkers and the general public.

(Tr. 564.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (Tr. 575.)  However, at step five, the ALJ found that, considering Plaintiff's age (45 on the alleged onset date of disability), education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 576.)  Therefore, Plaintiff was not disabled.  (Tr.

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 560–61.)

4

577.)

## IV. Analysis

### A. Treating Psychiatrist

Plaintiff first argues that the ALJ erred in failing to state the weight given to the opinions of Dr. Rex Birkmire, Plaintiff's treating psychiatrist, and in failing to articulate good cause, supported by substantial evidence, for discounting those opinions.  (Doc. 22 at 14–22.)

To discount the opinions of a treating doctor, the ALJ is required to provide "good cause."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2014).  Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.* at 1240–41.  The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

The ALJ summarized and addressed the opinions of Dr. Birkmire at length.  (Tr. 572–74.)  The ALJ stated in part:

> On August 21, 2017, Dr. Birkmire submitted an additional statement regarding his opinion of the claimant's mental ability to work (Ex. 16F).  Dr. Birkmire indicated that he first met the claimant at Florida Hospital in July of 2010.  The psychiatrist noted the claimant's diagnoses included ADHD, anxiety disorder, and bipolar I disorder.  Dr. Birkmire estimated the claimant has moderate to severe

5

limitations in maintaining social functioning, in restriction of activities of daily living, and in deficiencies of concentration, persistence, or pace. Dr. Birkmire opined the claimant has severe degree of repeated episodes of deterioration or decompensation in work or work-like settings, which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (Ex. 16F, p.2). He then went on to estimate the claimant has moderate to severe limitations in the ability to perform basic work activities on a number of tasks. Dr. Birkmire commented the claimant's bipolar I with psychosis just gets worse over the years. In addition, Dr. Birkmire circled a number of symptoms related to affective disorder and manic syndrome in a separate document. Dr. Birkmire opined as well that the claimant has marked restriction of activities of daily living; marked difficulties in maintain [sic] social functioning; and deficiencies of concentration, persistence, or pace (Ex. 16F, p.7). Dr. Birkmire then made disparaging comments regarding the prior ALJ opinion of his testimony at the prior hearing and stated "the person reading [his] notes needs better training on how to do so" (Ex. 16F, p.8).

In regards to this opinion alone by Dr. Birkmire, the undersigned first notes the psychiatrist filled out a form by circling most of his opinions. He did not provide any records or notes to back up the items that he circled. Regardless, these forms are just circled with little meaning and no analysis. Second, the opinion is internally inconsistent where Dr. Birkmire on page 2 of Exhibit 16F indicates the claimant is moderately severe in maintaining social functioning, in restriction of activities of daily living, and in deficiencies of concentration, persistence, or pace (Ex. 16F, p.2). Then on page 7 of the Exhibit 16F, Dr. Birkmire opined as well that the claimant has marked restriction of activities of daily living; marked difficulties in maintain [sic] social functioning; and deficiencies of concentration, persistence, or pace. Finally, Dr. Birkmire's comments regarding whether the claimant should receive disability is not up to Dr. Birkmire. The legal determination of disability under the Social Security Act is reserved exclusively for the Social Security Administration.

6

> In general, the opinions from Dr. Birkmire are very dire but his treatment notes do not support these opinions. Often, there are no or few objective findings notes upon the claimant's visits.  The undersigned would expect to see visits that are more frequent or one or more hospitalizations since 2010 to support these opinions, but there is none.  Even the alleged hospitalization in 2009 is not substantiated by the medical evidence of record; the undersigned points out that she left the record open for these records but none were produced.  Exhibit 5F refers to four or more episodes of decompensation, which is totally unsupported by the evidence; thus, it appears Dr. Birkmire is not familiar with our standards or process.  Exhibit 9F states the claimant is "one of the sickest patients in my practice."  But again, the undersigned would expect more frequency of visits, hospitalizations, emergency room visits, or more dire objective findings reflected in the treatment notes if true.  Exhibit 16F reveals that Dr. Birkmire contended the claimant's bipolar I and psychosis just gets worse over the years.  So, one would expect more visits, hospital visits (emergency room or inpatient), more objective findings, etc.  Instead, records show less frequency of treatment over the years.

(Tr. 573–74.)

First, the undersigned recommends that although the ALJ did err in failing to explicitly state the weight she was according to Dr. Birkmire's opinions, such error is harmless. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011)[3] (applying the harmless error doctrine to social security cases).  It is apparent that the ALJ gave little to no weight to those opinions.  Thus, the ALJ's decision is sufficient to allow for meaningful review, and remand would be a

---

[3] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

useless exercise.  *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) (noting that where "remand would be an idle and useless formality," a reviewing court is not required to "convert judicial review of agency action into a ping-pong game"); *Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

Second, the undersigned recommends that the ALJ did articulate good cause, supported by substantial evidence, for giving the opinions of Dr. Birkmire little to no weight.  Although the ALJ articulated a number of adequate reasons for discounting Dr. Birkmire's opinions, the heart of the ALJ's reasoning was that Dr. Birkmire's severely restrictive opinions were inconsistent with the lack of any psychiatric hospitalizations or even emergency room visits, the lack of dire objective findings reflected in the treatment notes, and the lack of increased frequency of visits coinciding with the supposed worsening of Plaintiff's condition. (Tr. 574.)  The undersigned recommends that these are reasonable conclusions from the evidence.  The ALJ did not have to accept Dr. Birkmire's statement that Plaintiff "is one of the sickest patients in my practice and it would be heinous if disability were to be denied and frankly, nothing short of malfeasance."  (Tr. 521, 573.)  The ALJ correctly observed that the determination of disability was up to her, not Dr. Birkmire.  (Tr. 574.)  Furthermore, the ALJ was not required to accept Dr. Birkmire's explanation for Plaintiff's lack of psychiatric hospitalization, i.e., that Dr. Birkmire did "everything he can to prevent those because the psychiatric

8

hospitals provide little, if any care." (Tr. 69, 573.)  Plaintiff's arguments essentially ask this Court to reweigh the evidence and view it in a different light than did the ALJ.  (Doc. 22 at 15–22.)  However, that is not this Court's function.  For these reasons, the undersigned recommends that the ALJ did not err regarding Dr. Birkmire's opinions.

### B. Vocational Expert

Next, Plaintiff argues that the ALJ erred in posing a hypothetical question to the vocational expert ("VE") that did not adequately reflect Plaintiff's limitations. (*Id.* at 22.)  Part of this argument is based on Plaintiff's first argument regarding the opinions of Dr. Birkmire.  (*Id.*)  For the same reasons previously expressed, the undersigned recommends that this argument be rejected.

In addition, Plaintiff argues that the VE did not provide sufficient testimony to prove a significant number of jobs existing in the national economy that Plaintiff could perform.  (*Id.* at 23.)  Plaintiff's argument is based largely on the following testimony at the hearing:

> Q      All right, would there be other jobs this person could perform?
>
> A      One second, Your Honor.
>
> Q      Um-hum.
>
> A      Yes, Your Honor.  The first job - - sorry, one second.  The first job is Cleaner 2; DOT number 919.687-014, medium, with a SVP of 1, there's approximately 131,000 jobs in the national economy.  The next job, Your Honor, is Sandwich Maker; DOT number 317.664-010, medium, with a SVP of 2, there's approximately 50,000

9

jobs in the national economy. And the next job, Your Honor, is Trimmer, Meat.

HR: Trimmer of what?

VE: Meat.

HR: Oh, meat, thank you.

VE: DOT number 525.684-054, medium, with a SVP, Your Honor, of 2, there's approximately 27,000 jobs in the national economy.

. . .

      EXAMINATION OF [VE] BY ATTORNEY:

Q    In regards to the jobs that you gave us with the job number, with the number of jobs available in the national economy, how do you arrive at the figures of jobs available in the national economy?

A    We use the Skill Training Methodology, which is peer reviewed and from there, they use the Bureau of Labor and Statistics, OES survey.

Q    Okay, so when Skill, is the Skill Training - - so when you're giving those numbers, you're looking at the program called Skill Training, is that how that works?

A    Yes, it starts from with [sic] Skill Training.

Q    Okay.

A    And then the - - we capture a waiting number, so we use the OES group, the job [sic] that are in the OES group and then we multiply by the percentages of the NAICS, and I know that's a lot of terminology. I'm just trying to - -

Q    I'm always fascinated on how these numbers come about, so - -

A    One second.

10

Q    So, you have a formula that you could show me, then?

A    There's a formula, yes, ma'am.

Q    Oh, cool.

A    That's done, and I know for us, we go through each - -

Q    Who's us?

A    Well, for vocational experts.

Q    Okay, okay.

A    We go through all the jobs that are listed, because sometimes you may show that a groundskeeper could be working at the courthouse, or it could be at a job that may no longer be available. So, we have to personally go through each job to make sure this job is available in this particular industry.

Q    So, when you gave us the numbers of, let's just say 131,000 nationally - -

A    Um-hum?

Q    - - for the cleaner, was that just for that one particular occupation DOT Code? Or that was a group?

A    That was a group.

Q    Okay, so when you gave the 131,000 jobs, there could be other jobs in the group that don't meet the limitations of the hypothetical?

A    That is correct.

Q    Okay, so we don't know about [sic] that 131,000 is exactly accurate - -

11

>   A   Well - -
>
>   Q   - - then for that one particular job?
>
>   A   Well, it is accurate, well, for the most part that particular number is accurate for - -
>
>   Q   The group?
>
>   A   - - for that particular group, yes - -
>
>   Q   Okay.
>
>   A   - - ma'am.
>
>   Q   And in the group, there's other jobs?
>
>   A   Yes, ma'am.

(Tr. 620–23.)

Recognizing that the Commissioner has the initial burden of proof on this issue, the question presented is whether a reasonable factfinder could conclude, based on the VE's testimony and no other evidence, that jobs existed in significant numbers in the national economy that Plaintiff could perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) ("At step five the burden of going forward shifts to the SSA to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  If the SSA makes this showing, the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA].") (citations and quotations omitted); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  The undersigned recommends that a reasonable factfinder could so conclude.  The VE

testified that based on peer-reviewed methodology, over 200,000 jobs existed in the national economy that a person such as Plaintiff could perform. (Tr. 620–21.) She also testified that she went through each job listed to make sure it was still available in the industry. (Tr. 622–23.) Although the VE admitted that the numbers given were not exact, the Eleventh Circuit has never required exact numbers of jobs. *See Atha v. Comm'r, Soc. Sec.*, 616 F. App'x 931, 934 (11th Cir. 2015) ("This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations."). Moreover, the Eleventh Circuit has upheld findings that 840 jobs in the national economy and 174 jobs in the regional economy constitute a significant number. *Brooks v. Barnhart*, 133 F. App'x 669, 670–71 (11th Cir. 2005); *see Bailey v. Astrue*, 739 F. Supp. 2d 1365, 1382–83 (N.D. Ga. 2010) (collecting cases).

Finally, the recent Supreme Court case of *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) is instructive. In that case, the Supreme Court held that a VE's testimony regarding the number of jobs in the national economy can constitute substantial evidence even when the VE refuses to provide the data supporting that testimony. *Id.* at 1151. In so holding, the Supreme Court emphasized the relative informality of disability hearings, the recognized expertise of VEs, the deferential "substantial evidence" standard (referred to as the "more-than-a-mere-scintilla threshold," which "defers to the presiding ALJ, who has seen the hearing up close"), and the fact that a VE's testimony can constitute substantial evidence even without supporting data. *Id.* at 1151–57. All of these considerations weigh in favor

13

of affirmance in this case. Therefore, the undersigned recommends that the ALJ did not err regarding the VE's testimony.

### C. Credibility

Finally, Plaintiff argues that the ALJ failed to make an adequate credibility finding. (Doc. 22 at 24–25.) The undersigned recommends that this argument be rejected. "If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ 'must articulate explicit and adequate reasons for doing so.'" *McMahon v. Comm'r, Soc. Sec. Admin.*, 583 F. App'x 886, 893 (11th Cir. 2014) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."[4] *Foote*, 67 F.3d at 1562.

In discounting Plaintiff's credibility, the ALJ stated in part:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 566.)

---

[4] "SSR 16-3p rescinded SSR 96-7p, which provided guidance on how to evaluate the credibility of a claimant's statements about subjective symptoms like pain. The new ruling eliminated the use of the term 'credibility' . . . [and] explains that adjudicators will consider whether the 'individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.'" *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (citations omitted).

Plaintiff argues that the aforementioned statement is meaningless boilerplate. (Doc. 22 at 25.) However, the ALJ did not rely on that statement alone. For example, she stated:

> Admittedly, the claimant testified to little activities of daily living; however, these assertions cannot be objectively verified. The claimant's testimony, considered in light of the record as a whole, is not convincing that his subjective symptoms are of such frequency, intensity, or duration as to preclude all work activity. Reported limitations at the hearing and to the DDS appear to be self-prescribed. For instance, the claimant is able to perform personal care without any difficulties. He is able to do household chores, walk, drive, go out alone, shop, count change, use the computer, play computer games, listen to music, and attend NAMI group sessions (Ex. 8A, p.4). He mows the lawn (Ex. 15F, p.15). Accordingly, the undersigned concludes that the evidence does not generally support the claimant's allegations and he should not be prevented from performing within the medium level of exertion.

(Tr. 565.)

Moreover, the ALJ exhaustively discussed the medical evidence, the testimony, the opinion evidence, and other pertinent evidence of record. (Tr. 562–75.) The undersigned recommends that the ALJ reasonably concluded that Plaintiff's testimony was inconsistent with the overall evidence, and that the ALJ's decision is sufficient to allow for meaningful review. *See Hanna*, 395 F. App'x at 636. Therefore, the undersigned recommends that the ALJ did not err regarding Plaintiff's credibility.

### V. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on April 12, 2019.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable John Antoon II
Senior United States District Judge

Counsel of Record

16